IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:15CR297 |
| | ) | |
| v. | ) | |
| | ) | |
| DARION R. HAYNIE, | ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the defendant Darion R. Haynie's motion to suppress (Filing No. 19) and the Findings and Recommendation (Filing No. 31) of the United States Magistrate Judge. Following an evidentiary hearing, Magistrate Judge Gossett issued oral findings of fact and conclusions of law and a brief Findings and Recommendation. Magistrate Judge Gossett recommended that Haynie's motion to suppress be granted in part and denied in part. The defendant objected to the Magistrate Judge's Findings and Recommendation (Filing No. 39).

**STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court shall make a de novo determination of those portions of the report, findings, and recommendations to which the defendant has objected. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. The

Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

**FACTUAL BACKGROUND**

On July 5, 2015, officers James Holtmeyer ("Officer Holtmeyer"), Christopher Rock ("Officer Rock"), and Timothy Lasater ("Officer Lasater") of the Omaha Police Department received information from a concerned citizen (Filing No. 34, Hearing Transcript "Tr." at 13). The concerned citizen told officers that Michael Haynie was in possession and was selling crack cocaine and marijuana, and that he was also in possession of a firearm (*Id.*). The concerned citizen was also able to provide two vehicles with license plate numbers associated with Michael Haynie (*Id.* at 13-14). After receiving the information, Officer Holtmeyer accessed the NCJIS database which gave Michael Haynie's last known address (*Id.* at 14-15). Officers Holtmeyer, Rock, and Lasater set up surveillance at 6707 Parkview Lane, Michael Haynie's last known address (*Id.* at 16).

While conducting surveillance, a white Chevy Impala registered to Michael Haynie pulled into 6707 Parkview Lane (*Id.* at 16-17). The officers observed Michael Haynie enter the house and leave ten minutes later (*Id.* at 17-18). The officers followed Michael Haynie's car and observed two traffic violations, which led to a traffic stop (*Id.* at 18-19).

During the stop, a baggie of marijuana was found on the driver's seat between Michael Haynie's legs (*Id.* at 21). The officers searched the vehicle and found more marijuana, empty sandwich baggies, and a digital scale with marijuana residue in the back seat of the vehicle (*Id.* at 22). Michael Haynie was advised of his *Miranda* rights and stated he was willing to speak to the officer (*Id.* at 23-24). Michael Haynie admitted the marijuana in the driver's seat was his but not the marijuana located in the back seat (*Id.* at 28).

During the traffic stop and search of the car, Darion Haynie, arrived on the scene (*Id.*). The officers released Michael Haynie's keys to Darion Haynie so that he could take Michael's car after Michael was detained (*Id.* at 29). The officers then transported Michael Haynie and his passenger back to 6707 Parkview Lane (*Id.* at 29-30).

At 6707 Parkview Lane, Officer Holtmeyer and Officer Rock knocked on the door (*Id.* at 30). A female answered the door and advised the officers that the homeowner, Sharon Haynie, was in her bedroom (*Id.* at 31). The female escorted the officers to Sharon Haynie's bedroom (*Id.*). The officers introduced themselves to Sharon Haynie and asked to search the house (*Id.* at 33). Sharon Haynie did not provide consent to search the house (*Id.* at 34).

While talking to Sharon Haynie, Darion Haynie entered the home (*Id*.). Darion Haynie entered his bedroom, but Officer Rock asked him to come out of his bedroom (*Id.* at 35). After being denied consent, the officers were concerned about the destruction of evidence and their safety in the home (*Id.* at 36). As a result, Officer Holtmeyer and Officer Rock conducted a protective sweep of the house (*Id.* at 37).

During the protective sweep, the officers observed firearms, ammunition, marijuana, and containers with marijuana residue (*Id.* at 38-39). After the protective sweep, Officer Holtmeyer and Officer Rock went to the northwest precinct to draft a search warrant (*Id.* at 39). Officer Holtmeyer testified that he had conducted protective sweeps in the past after being denied consent and he was not aware of that evidence being suppressed (*Id.* at 40-41). Officer Holtmeyer also testified that he believed he had enough probable cause to apply for a search warrant after the traffic stop, and that he made the decision to apply for a search warrant before the officers knocked on the door at Parkview Lane (*Id.* at 86).

The officers searched the house after obtaining a search warrant (*Id.* at 44). The search produced marijuana, two firearms, and ammunition (*Id.* at 44-45). Darion Haynie was interviewed after the search (*Id.* at 46). Darion Haynie was

advised of his *Miranda* rights and stated he was willing to speak to the officers (*Id.* at 47-48). Darion Haynie admitted that the MasterPiece Arms 5.7-by-28 -millimeter MAC 10-style pistol was his (*Id.* at 51). Michael Haynie was also interviewed after the search (*Id.* at 54). Officer Holtmeyer told Michael Haynie that he informed him of his *Miranda* rights on the scene of the traffic stop and asked if he was willing to continue the interview, to which Michael Haynie agreed (*Id.* at 55). Michael Haynie admitted that the Mason jar in the laundry room containing two ounces of marijuana was his, as well as the marijuana inside the vehicle (*Id.* at 56-57).

Darion Haynie was cited for a criminal offense but not physically taken and booked by the officers (*Id.* at 60). Michael Haynie was physically arrested and transported to central police headquarters (*Id.*). Michael Haynie consented to a buccal swab for DNA (*Id.* at 61).

Darion Haynie moved to suppress the statements and evidence obtained the evening of July 5 (Filing No. 19). Judge Gossett held an evidentiary hearing[1] on December 16, 2015. Law enforcement officers James Holtmeyer, Christopher Rock, and

---

[1] The hearing was held in conjunction with the hearing on the Motion to Suppress in United States v. Michael D. Haynie (*See* 8:15CR295).

Timothy Lasater testified at the hearing. Magistrate Judge Gossett found their testimony credible.

At the close of the hearing, Magistrate Judge Gossett found that the circumstances did not amount to exigent circumstances allowing for a protective sweep (*See Id.* at 183-184). The mere presence of Darion Haynie in the house does not create an imminent threat that evidence would be destroyed. Therefore, there was no lawful basis for the protective sweep.

However, Magistrate Judge Gossett found that with all the evidence gained by the protective sweep excluded from the warrant application and affidavit, there remained sufficient information to establish probable cause to obtain a search warrant (*Id.* at 184). In addition, even if the affidavit was insufficient, Magistrate Judge Gossett found that the *Leon* good-faith exception applies. *See United States v. Leon*, 468 U.S. 897, 921-22, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). (Tr. at 185-86).

Darion Haynie objects to the magistrate judge's conclusion that the search warrant was valid, having excised the information obtained during the protective sweep, and finding that the *Leon* good-faith exception applies if the warrant was found to be invalid.

**LAW**

Warrantless searches and seizures inside a home are presumptively unreasonable. *See Kentucky v. King,* 563 U.S. 452, 460, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011). The Fourth Amendment permits an officer to conduct a protective sweep of the premises if there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Maryland v. Buie,* 494 U.S. 325, 334, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). A protective sweep "is not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found" and can last "no longer than is necessary to dispel the reasonable suspicion of danger." *Id.* at 335-36. In addition"[t]he risk that evidence will be destroyed during the time required to obtain a search warrant can be an exigent circumstance that justifies a warrantless entry." *United States v. Leveringston*, 397 F.3d 1112, 1116 (8th Cir. 2005).

"A violation of the Fourth Amendment usually triggers exclusion of evidence 'obtained by way of' the violation from a subsequent criminal prosecution." *United States v. Barraza-Maldonado*, 732 F.3d 865, 867 (8th Cir. 2013)(quoting *Davis v. United States*, 564 U.S. 229, 131 S.Ct. 2419, 2423, 180 L.Ed.2d

285 (2011)). "[T]he exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or fruit of the poisonous tree." *United States v. Hastings*, 685 F.3d 724, 728 (8th Cir. 2012) (quoting *United States v. Riesselman*, 646 F.3d 1072, 1078 (8th Cir. 2011)). The evidence should be excluded, however, only if the "illegality is at least a but-for cause of obtaining the evidence." *Hastings*, 685 F.3d at 728.

However, the Supreme Court has held that the "independent source" doctrine allows for the admission of evidence that has been discovered by means totally independent of any constitutional violation. *See Nix v. Williams*, 467 U.S. 431, 443, 104 S.Ct. 2501, 81 L.Ed.2d 337 (1984). When faced with a warrant containing information obtained pursuant to an illegal search, a reviewing court must excise the offending information and evaluate whether what remains is sufficient to establish probable cause. *United States v. Dessesaure*, 429 F.3d 359, 367 (1st Cir. 2005). If an affidavit in support of a search warrant "sets forth sufficient facts to lead a prudent person to believe that there is a 'fair probability that contraband or evidence of a crime will be found in a particular place,'" probable cause exists and a warrant may issue. *United States v. Warford*, 439

F.3d 836, 841 (8th Cir. 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 537 (1983)). When a search warrant "is based partially on tainted evidence and partially on evidence arising from independent sources, '(i)f the lawfully obtained information amounts to probable cause and would have justified issuance of the warrant apart from the tainted information, the evidence seized pursuant to the warrant is admitted.'" *United States v. Williams*, 633 F.2d 742, 745 (8th Cir. 1980)(quoting *James v. United States*, 418 F.2d 1150, 1152 (D.C. Cir. 1969)).

Even if an affidavit is insufficient to establish probable cause to issue a search warrant, evidence may still be admitted if the officer executing the search warrant relied in good faith on a judge's determination that there was probable cause to issue the warrant and that reliance was objectively reasonable. *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). To assess whether an officer relied in good faith on the validity of a warrant, a court must consider the totality of the circumstances, including any information known to the officer but not included in the affidavit. *United States v. Jackson*, 784 F.3d 1227, 1231 (8th Cir. 2015). A finding of good faith may be precluded when the judge issuing the search warrant "wholly abandon[s] his judicial role" or when the

affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (citations omitted).

**DISCUSSION**

The Court agrees with Magistrate Judge Gossett that the protective sweep lacked exigent circumstances; therefore it was unconstitutional. The officers' testimony at the evidentiary hearing showed that Darion Haynie was present in the house; however, there was no imminent threat that Darion Haynie would destroy evidence. The testimony indicated that Darion Haynie listened to Officer Rock's command to leave his own bedroom (Tr. at 72, 119). Officer Rock also indicated that he kept an eye on Darion Haynie while he was in the hallway (*Id.* at 119). The presence of Darion Haynie, without more, is not enough for a reasonable officer to believe that destruction of evidence is imminent.

In addition, the Court agrees with Magistrate Judge Gossett's findings that the search warrant, excised of the information found during the protective sweep, provides probable cause for the issuance of a search warrant. The government has shown that the seized evidence is admissible under the independent source doctrine. The Court finds that the affidavit

in support of the search warrant contains sufficient facts to lead a prudent person to believe that there was a fair probability that contraband or evidence of a crime would be found in the house.  Those facts include the concerned citizen's information about Michael Haynie in possession of marijuana, crack cocaine, and a hand gun, the concerned citizen's information about the cars driven by Michael Haynie, Michael Haynie being stopped in the exact car identified by the concerned citizen, and marijuana, empty sandwich bags, and a digital scale found in the driver's seat of Michael Haynie's car.  Therefore, a neutral and detached magistrate judge could find probable cause within the four corners of the affidavit excluding the information found during the protective sweep.  In light of this finding, the Court does not need to address the *Leon* good-faith issue. Accordingly,

IT IS ORDERED:

1)   The defendant's objection (Filing No. 39) to the Findings and Recommendation (Filing No. 31) is overruled.

2)   The Findings and Recommendation of the United States Magistrate Judge (Filing No. 31) are approved and adopted.

3)   The defendant's motion to suppress (Filing No. 19) is denied.

4) Trial of this matter is scheduled for:

**Monday, April 11, 2016, at 9 a.m.**

Courtroom No. 5, Roman L. Hruska United States Courthouse, 111 South 18th Plaza, Omaha, Nebraska.  The date will accommodate not only the schedule of the Court but will give the parties time to finalize plea negotiations.  The ends of justice will be served by continuing this case and outweigh the interests of the public and the defendant in a speedy trial.  The additional time between March 8, 2016, and April 11, 2016, shall be deemed excludable time in any computation of time under the requirement of the Speedy Trial Act.  18 U.S.C. § 3161(h)(8)(A) & (B).

DATED this 8th day of March, 2016.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court